**JACQUES, Admx., Plaintiff-Appellant, v. THE DAYTON POWER AND LIGHT CO., Defendant-Appellee.**

Ohio Appeals, Second District, Montgomery County.

No. 1896.   Decided January 31, 1947.

Chester R. Shook and Richard T. Carroll, Cincinnati, and Andrew S. Iddings, Dayton, for plaintiff-appellant.

William Mills Matthews, Dayton, for defendant-appellee.

## OPINION

By HORNBECK, PJ.

This is an appeal on questions of law from a judgment dismissing plaintiff's second amended petition after a general demurrer had been sustained thereto. We hereinafter refer to the second amended petition as the petition.

Plaintiff's action was for damages for the wrongful death of her husband who came to his death when a boom scoop came into contact with high voltage uninsulated wires maintained and operated by defendant.

The demurrer was sustained by the Common Pleas Judge upon the proposition that the amended petition of the plaintiff suggested his contributory negligence and that the infer-

ence thus produced was not countervailed by any proper averment.

It is the claim of the appellant that this conclusion was erroneous for two reasons, first, that there is no support in law for the conclusion that contributory negligence may be inferred from the pleadings alone, and, second that the petition does not permit of the determination as a matter of law that plaintiff's decedent was contributorily negligent.

We cannot support the first contention of the appellant. It is altogether possible that a petition may aver such ultimate facts as that there may be but one conclusion, namely, that the plaintiff is chargeable with contributory negligence which, as a matter of law, would preclude any recovery. However, such determination may only be made if, and when, the facts pleaded will permit of no other reasonable conclusion. If an inference may be drawn consonant with due care it must be indulged.

Although the demurrer was sustained on the theory of the contributory negligence of plaintiff's decedent, three questions are presented on the appeal, namely, first, what was the relationship of plaintiff's decedent in his entrance into and upon the premises of Eby, second, is any actionable negligence charged against the defendant, and third, if so, is plaintiff's decedent chargeable with contributory negligence as a matter of law?

Appellant insists that the action of the Common Pleas Judge in sustaining the demurrer must be supported upon the proper determination of all of the foregoing propositions.

The pertinent facts appearing in the petition are that the defendant company carried high voltage uninsulated wires over the land of Jacob and Emma A. Eby and in a conveyance from said Ebys to the defendant of date January, 1942, said company agreed that its wires would have a clearance above the ground on the Eby lands of not less than twenty-five (25) feet. On or about April 2, 1942, plaintiff's decedent was authorized to enter the Eby premises

"by reason of a requisition issued to Charles H. Sisson, United States Marshal of the Southern District of Ohio, by the United States of America, under Act of October 16, 1941, by which the Metal Reserve Company, its servants, agents and employes, were to remove certain scrap metal located on said Eby Farm, to be used for the war defense of the United States of America. That this decedent was authorized to enter said Farm by the authorized agent of the purchaser of said scrap metal from the Government.

"That * * * while decedent, * * *together with the driver of a crane-truck to which was attached a boom-scoop, was preparing to load said old scrap metal located on said Eby Farm onto said truck, * * *, in accordance with the aforesaid requisition, * * *, said boom-scoop came into contact with high voltage uninsulated wires maintained and operated by this defendant corporation, * * *, causing the immediate death of decedent, Norman Jacques."

The acts of negligence specified are, allowing the high voltage uninsulated wires to sag to within a distance of 22 feet from the ground in contravention of the terms of the conveyance from the Ebys to the defendant that said wire should have a clearance of not less than 25 feet above the ground; failure to supervise or inspect said wires properly; and failure to post any signs or other notices by which the driver of the truck and decedent would be warned of the danger involved.

, It is urged by the appellee that, at most, plaintiff's decedent was a licensee upon the lands of Eby, **Hannan v Ehrlich, 102 Oh St 176, Echert, Admr. v Refiners Oil, 17 Oh Ap 221**, that, therefore, the obligation of the defendant 'to plaintiff's decedent was only to refrain from wanton, wilful or reckless misconduct which was calculated to injure him, **Soles v Ohio Edison, 144 Oh St 373; Hyer v Ohio Public Service, 73 Oh Ap 530.** Appellant does not discuss this questtion in her brief but manifestly it is germane and essential because if appellee's claim is correct, then the demurrer was properly sustained.

It is our judgment that, giving to the allegation of the petition a permissible interpretation, it may not be said that plaintiff's decedent was a trespasser and licensee only but that it may be concluded that he was an invitee of Eby. It must be presumed, at this juncture, that the scrap iron which plaintiff's decedent was about to remove from the Eby premises was placed there by and with the consent and agreement of the Ebys and likewise that if placed there, the owner of the iron, his agent, or representative, would have the right to remove it by any practical means of removal and that the means sought to be employed by plaintiff's decedent and the driver of the truck was a customary means of loading and removing such scrap iron. It must also be presumed, until the contrary appears, that any order made by the Federal District Court authorizing the employer of decedent to enter upon the Eby premises to remove the scrap iron was made with the knowledge of and with the full protection of the rights of the owner, Eby. Indulging the foregoing inferences, it is logical and appropriate to conclude that plaintiff's decedent and the

truck driver were properly upon the premises of the Ebys and there upon express or implied invitation. **29 O. Jur. 464.** It is said that "licensees are persons whose presence is not invited, but tolerated." The test of an invitee is whether or not he is invited onto the premises expressly or impliedly by the owner, or occupier, for some purpose of business or of material interest. Latham v R. Johnson & Nephew, 1 K. B. (Eng.) 398.

Does the petition set up any specification of actionable negligence? It is asserted that the defendant company permitted its high voltage wires which were uninsulated to sag to a distance of 22 feet from the ground in violation of the terms of the deed from the Ebys and that this sagging was of such consequence as to cause the boom-scoop to come in contact with said wire when otherwise it would have cleared it. This contract was made primarily for the benefit and protection of Eby and, undoubtedly, it had for its purpose the protection of Eby but also for those who, at his invitation, were properly upon his premises from the danger of the overhead wires.

May the contract between Eby and the company be the basis of a tort action on the part of the plaintiff against the defendant? This question is considered in a well-reasoned opinion by Judge Vickery in **The Cleveland Railway Co., et al. v Heller, 15 Oh Ap 346,** and cases are cited from many jurisdictions in support of the third proposition of the syllabus—

"A person who is injured upon a street railway track by reason of a defect in the street, caused by the negligence of the railway company in allowing it to remain in such unsafe condition, in violation of its contract with the city to keep that part of the street in constant repair, may maintain an action against such railway company for the injuries thus sustained."

This authority supports the claim that the Eby contract may be the basis of the tort action of the plaintiff against the defendant on the theory that her decedent was a third party for whose benefit the contract was made. It is urged that the status of plaintiff's decedent under the contract is not like that of one of the public in the cited case. We are not able to make such distinction. The Eby contract was made not only for the protection of the owner of the land but for those who by his invitation were on the land about their business which may have been for the mutual benefit of the owner and the lessee of the land.

It is urged that it is not negligence to maintain high voltage wires uninsulated. This is true but the allegation of negligence is not the maintenance of uninsulated wires but

the maintenance of such wires at an unsafe distance from the ground in violation of the terms of the contract and the failure to inspect the wires, or to warn those properly on the land of the unsafe condition. The averments of the petition, undenied and uncontradicted, state actionable negligence against the defendant.

The last question and the principle assignment of error discussed is the contributory negligence of plaintiff's decedent. Both parties cite, discuss at great length and rely upon **Hetrick v Power Co., 141 Oh St 347.** Let us analyze this case not only to learn what it adjudicates but also what it does not determine. The judgment in the Supreme Court is manifestly properly based upon the proposition that the facts appearing afforded no substantial support for an inference of any negligence against the defendant company. It did not rest upon any conclusion that plaintiff's decedent was chargeable with contributory negligence as a matter of law. It is authority to the effect that the trial court erred in submitting the cause to the jury and that the motion for a directed verdict interposed at the conclusion of plaintiff's evidence and at the conclusion of all the evidence should have been sustained. Whether or not the appellate court which entered judgment for defendant based its conclusion in part upon the contributory negligence of plaintiff's decedent does not appear but certain it is that the judgment in the Supreme Court was grounded upon the fact, which is found in the last sentence of the opinion, namely, "The plaintiff failed to prove any actionable negligence on the part of the defendant and the judgment of the Court of Appeals therefore is correct and should be affirmed." But it is said that Judge Bell in the opinion said on page 356:

"This record discloses that both telephone and light wires carry electrical energy; the difference is only in the intensity of the current. We think that the presence of these suspended wires, in and of themselves, is a warning to the adult public of potential danger."

This statement is not carried into any proposition of the syllabus, it is not necessary to the judgment nor does it require the conclusion that the mere failure to refrain from coming in contact with wires strung along poles is contributory negligence as a matter of law. The difference is manifest in the dangerous nature of a telephone wire and a wire highly charged with electrical energy used for power.

The rule is that generally the contributory negligence of one who receives an injurious shock or is killed by the sagging of an electric wire over the highway is for the determination of the jury. Annotation to Interstate Power Co. v Thomas, 84 A. L. R. 694; 18 Am. Jur. 516; 29 C. J. S. 606.

In **The Ohio Power Co. v Fittro, Admx., 36 Oh Ap 186,** the defendant company, a distributor of electrical energy, ran one of its lines from Mt. Victory to West Mansfield on the public road. An automobile struck one of the poles along said line, broke it off and caused the wires to sag to within 5 to 6 feet of the ground. One man entering a ditch along side the road to render assistance came in contact with a wire and was electrocuted. Upon notice, the defendant shut off the current and thereafter the company was notified that the wires were clear and ten feet from the ground whereupon the current was again turned on. The company made no further examination at the time of the wires and placed no warning signs about them. Plaintiff's decedent learning of the death as the result of the first accident, reached the scene of the accident about six o'clock in the evening, went to the east edge of the road in close proximity to the wires and was electrocuted by an arc of electricity from the wires. Upon these facts the court re-announced the well-recognized principle that a verdict for plaintiff may not be disturbed as being manifestly against the evidence where different conclusions are possible under conflicting evidence of plaintiff's contributory negligence and that the deceased could not, under the facts appearing, be held, as a matter of law, chargeable with contributory negligence.

So, in this case, reasonable minds may differ under the facts appearing in the petition whether or not plaintiff's decedent exercised due care at and immediately prior to the time that he was killed. Whether he knew of the presence of the wires, and, if so, should have known that they were highly charged with electricity, whether he should have known that the boom-scoop was about to strike the wires, all of these facts must be tested in the light of the obligation of a reasonably prudent man under the circumstances appearing. Plaintiff's decedent was not the operator of the truck, although in charge of the boom-scoop and was directing the driver of the truck in his movements. His position on the truck whether facing the wires or whether there were any facts which would account for his failure to observe the wires, does not appear but contributory negligence is never presumed. Upon the contrary, the presumption is that plaintiff's decedent exercised due care and was not at fault.

We cannot support the claim that the knowledge of the presence of suspended wires in and of itself is sufficient to charge plaintiff's decedent with the further knowledge that they were dangerous instrumentalities and charged with a high voltage of electrical energy.

We are cited to numerous cases to the effect that one who has knowledge of a dangerous situation may not disregard it and if he does so, is chargeable with contributory negligence. Of course, this is a sound principle, but the cases cited all will permit of the differentiation between a condition which, in the exercise of ordinary care, may or may not have been known to be dangerous.

We briefly consider some of the cases cited in appellee's brief as establishing the contributory negligence of plaintiff's decedent. In Stackpole v Pacific Gas & Electric, 186 Pac. 354, it is said in the opinion "Both Price and his foreman knew that the wires were power wires" which caused the death of Stackpole and that it was apparent "that the proximate cause of decedent's death was not any negligence on the part of the defendant, but was the negligence of Price. The non-suit there was granted upon the second ground thereof, namely, that no negligence on the part of the defendant appeared.

In Boudraux v The Louisiana Power and Light Co., 135 So. 90, the verdict was directed on the same ground, namely, that there was no negligence in the maintenance of the wires though they were uninsulated. Likewise in Morton's, Administrator, v Kentucky-Tennessee Light & Power Co., 138 S. W. (2d) 345, and Buell v Utica Gas & Electric Co., 182 N. E. 77.

Hayden v Paramount Productions, et al., 91 Pac. (2d) 231, was grounded upon the proposition that defendant company was not chargeable with any negligence proximately causing plaintiff's injuries but that they were caused solely by the negligence of the appellant's employer in bringing its crane into a position where it could touch or come in dangerous proximity to the high voltage wires which were in plaintiff's view and to which were attached warning signs all of which was within the knowledge of said employer.

In Simons v Pacific Gas & Electric Co., 220 Pac. 425, it is manifest that plaintiff knew that defendant's 66,000 volt transmission line ran near plaintiff's well. Notwithstanding this knowledge, plaintiff, while repairing his well, pulled a big steel wire out of its casing which, touching him, caused his death, and a demurrer was sustained to plaintiff's petition.

In Sweatman v Los Angeles Gas & Electric Corp., 281 Pac. 677, there was no negligence whatever on the part of the corporation in the maintenance of its highly charged electrical

wires but plaintiff's decedent from the fifth floor of a building under construction caused a metal rod to be extended out of a window, over and into contact with the uninsulated wire. It was held that this occurrence was one which, in the exercise of reasonable care, the defendant company could not anticipate.

The demurrer to the second amended petition should have been overruled. The judgment will be reversed and cause remanded with instructions to overrule said demurrer.

WISEMAN and MILLER, JJ, concur.

Decided February 18, 1947.

## OPINION

By THE COURT:

Submitted on application of appellee for rehearing.

Some attention is directed to the claim (1) "that the court was misled as to the grounds upon which the demurrer to the amended petition was sustained." Manifestly, this can not be true because our decision directed attention specifically to the fact that not only the question of plaintiff's contributory negligence was involved but also "first, what was the relationship of plaintiff's decedent in his entrance into and upon the premises of Eby, second, is any actionable negligence charged against the defendant." Page 2 of the opinion.

(2) Certain facts are set forth on page 2 of the application of which we would have knowledge only if we took judicial notice thereof. This may not be done. It may be that developments respecting the order of the United States District Court might change the status of the parties. We treated only of inferences which may properly be indulged at this state of the proceedings.

The third ground of the application objects to our statement that the "sagging was of such consequence as to cause the boom-scoop to come in contact with said wire **when otherwise it would have cleared it.**" (Emphasis ours) This language is a permissible conclusion of the effect of the averment of the amended petition that the company permitted its high voltage wires which were uninsulated to sage to a distance of 22 feet from the ground in violation of the terms of the deed from the Ebys.

The fourth ground of the application is directed to the Eby contract which we discussed at length and fully in our original opinion.

The application will be denied.

WISEMAN, PJ, MILLER and HORNBECK, JJ, concur.

Chester R. Shook and Richard T. Carroll, Cincinnati, and Andrew S. Iddings, Dayton, for plaintiff-appellant.

William Mills Matthews, Dayton, Robert K. Corwin, Dayton, for defendant-appellant.